Your Honor, only if I don't expend myself too much on my opening argument and whatever you have left then, okay. Answering your expected pointed questions. Yes, go ahead, please. Thank you. So good morning to the panel. I do appreciate your time and review this matter. I'm Michael Checkian on behalf of the appellant, the debtor, and the plaintiff in the adversary matter, Christian Gadbois. So I'd like to start with the standard of review and actually an apology to the panel and to counsel. I did make a major error in briefing on the first issue, on the state of the law, and that's set forth in the En Re Partida case, 9th circuit, 2017, 862, Fed 3rd, 809, at page 912. Let me stop you for a sec right there. The argument would be that those are issues that are purely statutory interpretation, in your mind? Yes. Well, wouldn't it matter, for example, against whom an action were commenced? I mean, that's container here was commenced against the party of sense, the other party of the lease. And obviously, you got one, right? Isn't that a factual question? Yes. Okay, so that's clearer, right? It's mixed. It's a mixed fact. Okay, I'm going to be clearer. Fair enough. Okay. And I do want to talk about those facts. Sure. I think it's a fact, definitely a fact sensitive issue. And so, for the same proposition there, in that case, Eskimos and Adler, the lesion is cited, 9th circuit, 2002, 309, Fed 3rd, 1210. And so, I think, as to both issues on appeal, the state violation and the recovery of estate property issue, the panel should look at least in part with fresh eyes as to the de novo standard. And so, let's get into the facts. And I want to be honest. I think there's an easy issue for appellant on the facts, and there's a more difficult one. The easier one is, and this deals with what is property of the estate, so we have to start there. The easier factual issue is, was the Minter Air lease a contract in debtor's personal name or a DBA, which would be property of the estate. The lease was identified in the originally filed Schedule G of debtor's bankruptcy schedules. Which your counterparty had no notice of, right? Correct. Until significantly later in the case. That's correct. Mr. Gadwall was current on his lease obligation with the appellee as of the petition date. Well, he had all the series of amendments at some point, but certainly for a very long time. The airport authority had no idea there was a bankruptcy involved. Correct. They were not listed as a predator. Correct. It wasn't, as far as I know, until I actually wrote a letter as debtor's counsel to Mr. Stroud's law firm. Correct. Notifying them. So the lease was signed by debtor in his personal name, and the only mention of a business name was at the top of the very brief lease. Where did that identify the parties? It said the lessee was SRT Helicopter. That's kind of important, isn't it? Very important. Okay. But it's lacking LLC or ink or anything thereafter. And I think if you look at the trial testimony of which you've got a transcript of Jonathan Hudson, who's the sole witness for the appellee, he said he thought he was dealing with the LLC, the SLT Helicopters LLC, because of a business card given to him by Mr. Gadbois. He looked at the business card. It had a website on it. He reviewed the website. At the bottom of the website, it had the name SRT Helicopter LLC. Okay. So fine. So if we believe that, then why isn't that name on the lease? Two-thirds of it is. I mean, SRT Helicopters is there. Right. SLT Helicopter, singular. The actual LLC name is SRT Helicopters, comma, LLC. So is it your position that because of what you think of as an ambiguity, there was some obligation by the airport authority to do some due diligence and figure out who SRT was? Is that your question? Absolutely. And I asked, I examined Mr. Hudson at trial on that issue. Didn't ask for tax returns. Didn't do a Dun & Bradstreet check. When entering the lease, you're supposed to ask for tax returns. Not necessarily, but. . . That lease was not the most commercially sophisticated that I've ever seen. So that seems like some serious Monday morning quarterbacking. Why is that relevant in this standard in trying to assess who the parties are? Because the appellee is trying to say that it did not violate the state because the non-debtor SLT Helicopters LLC was the one sued. But I guess my problem is that you are suggesting what they should have done, where their testimony, what they did do. And you just, it doesn't seem like, you just disagree with that. It's not challenging what they did, which was check the card, back it up to the websites like the LLC. Why wasn't that enough? But it could have been enough. And if that wasn't enough. . . If it could have been enough, why is that error? Because if that's the only piece of evidence that Mr. Hudson, on behalf of the mentor heir, looked at before he drafted the lease, then he should have put that name at the top and he should have had Mr. . . . Doesn't that work both ways though? Your client really could have said his name as the party entering it, his name as the signatory DBA, or whatever. It works both ways. I guess your client could have been a lot more specific and clear if he's really saying now that he was the entity to whom the lease was being made. Well, I think SRT Helicopter on its face looks like a DBA. DBA is . . . SRT Helicopter looks like SRT Helicopter. Can I go back to something kind of fundamental? I mean, we began with the question of against whom was an action taken. It was taken against the LLC, right? Well, if you look at the excerpt of Record 3, you see that the lease termination notice started out in the name of Chris Gadbois, it was directed to Chris Gadbois, and then underneath it said SRT Helicopter, consistent with the lease. And then when they actually filed one or two lawsuits . . . Who did they sue? They sued SRT Helicopter's LLC. Yeah, okay. So the question really is, is there some basis on which the airport knew or was supposed to know or was obligated to know that this really wasn't a lease with SRT Helicopter LLC? That's the question, right? That's part of the question, but I think you need to look at the timing of all of this, and was it just laziness on behalf of MNSERA Air in not actually filing a Relief from Stay action and getting permission of the court, which they could have done and they didn't do? Well, if I take your first point that this is doctrinal and it's a legal issue, I mean the legal issue is what's the obligation of somebody who apparently has a contract, at least theoretically, with an LLC? Now, you may say that was more ambiguous than maybe Judge D'Souza thought it was, but the question is what's the obligation of the person before they take a legal action? And if the question is you've got to do some due diligence at some point, I mean does this get into whether there was really an understanding by the other party that they were evaluating the sector, or is it strict liability? Is it just, well, you know, if you're right that this is GABA, no matter what they did, the Air Force is going to be liable. I don't think it was a knowing violation until they knew. But once they knew, if there was a bankruptcy, then it would be. . . So once there was a bankruptcy, it doesn't change who the lessee is, right? Correct. Okay, that's what I'm trying to get at here. What's the duty you want to put on the lessor here? It's to sue in the name of the party to the lease, which was SRT Helicopter and Chris Gabwa. And they switched it. You can see that they switched it. But they didn't sue Gabwa, right? So they at least facially didn't violate the lease the next day in that sense. Correct. Okay. But then we look at the upshot. What was the result of them getting the default judgments during the pendency of the Chapter 13 was to lock out Mr. Gabwa from his business. As somebody who was an employee in the business from their perspective. Well, I think the records and files at the very least would be property of the estate. If we look at California Civil Code Section 1993.03 sub 8, it states in pertinent part, if property remains on the premises after a tenancy is terminated and the premises have been vacated by the tenant, the landlord shall give written notice to the tenant and to any other person the landlord reasonably believes to be the owner of the property. If the property consists of records as files. Is that a state violation or is that just a California statute that says what you're supposed to do when you lock somebody out? I think we need to look at California law to see. The last part I was going to read, Justice Lafferty, was that the tenant shall be presumed to be the owner of the records for the purposes of this chapter. And that's what Mr. Gabwa asserts is that this is his property, not the LLC's property. At the very least, the files that were in there and that are still built. There's still a lot of personal property still being held at the Mentor Air facility. Is it the question of who was the lessee under this lease? A question of fact? Yes. That is a factual question. Okay. And Judge, there's a little result of that against your client, right? Yes. That's on the basis that he was not credible. And I think the panel should look at what was admitted into evidence, which was one of his prior totally unrelated misdemeanor criminal conviction. And that was one of the bases that he found not to be credible. But if we find that factual finding is not clearly erroneous, what's left of your case? I think that the judge didn't analyze the fact that the plan was confirmed. The fact that under the code of 1325A7, that confirmation of a plan includes a finding of the court that the action of filing the petition was in good faith. And this is 100% the case. How does that bear on the question of who's the lessee under this lease? It bears on the issue of his finding that Mr. Dadwell was not credible. But, you know, just not to get too deeply into the weeds here, if there had been a disclosure at the time of plan confirmation that there are these other assets and these other relationships, the planning proposal wouldn't have been confirmed, right? I mean, you would have had to take account of some other liabilities and some other issues. You know, the trustee would have had some questions. I don't see how you can rely on confirmation at all, given the complete lack of candor, even if you're right about what the assets were. Well, this is a post-petition default. That's not the question. The question is, there would have been other questions had he had your client disclose all these other relationships. There's no guarantee. In fact, I would bet a fair amount of money that plan wouldn't have been confirmed, and the former was. Because the lease, the equipment, the records, those are, under your theory, wrong. His property, right, personal property, none of that was disclosed in the bankruptcy case prior to plan confirmation. That's true. And I admit that it's troublesome that the amendment was not filed until some time later. So you're relying on a plan confirmation order that's premised on a nondisclosure? Well, you have to look at the terms of the plan. The terms of the plan say that he's paying 100 cents on the dollar to all allowed claims. If this is a post-petition default, he's not getting a discharge of that debt. It's post-petition. And it's not mentioned, they're not listed as a creditor in the plan either, so they're not going to get a discharge of that, he's not going to get a discharge of that debt. Lease is rejected then, right? I mean, the nondisclosure has effects that go way beyond just plan confirmation. If the lease is rejected, which it probably was, he didn't assume it, that doesn't abrogate the stay. The stay is still there. There's a feasibility issue that never got a jury candidate either because of this other obligation. You're out of your time. Yeah, you predicted correctly. You used up your time in your opening argument, so thank you very much. Thank you. Appreciate your time. Mr. Stroud, let's see. Good morning. Good morning. All right, I would like to make just a few points this morning, and then I would like to answer any questions you have for me. The first thing I would like to say is this isn't the first time I've heard this argument, that the district could have and should have filed a relief from stay action. The difficulty with that theory is that as we stipulated in the Statement of Facts at trial, the district had no notice of this bankruptcy action until long after the unlawful data receipts were concluded, when I received the letter from Mr. Chackie. Now, the due diligence point that has come up both with regard to the bankruptcy and with regard to who the lessee is alleged to have been, this is a requirement I can find nowhere in the law. I don't think it exists. I do think that my client did engage in some amount of appropriate diligence. They did look up the website on the business card and see the business entity. They didn't detail the name in the lease the way that I would if I had drafted it for them. But as is often the case with leases of this magnitude, they didn't involve an attorney. It would have cost two months for them to get a lease written by my office probably. It wouldn't be worth it. But more important, I think, in this whole issue of who the lessee was, the facts as found below don't give an impression that there was a difference of opinion between the parties at the time of the lease as to who the party was. This isn't a situation where we can think that Christian Cadmois had a very clear sense in his head that it was this sole proprietorship and my client thought that it was the LLC and it was an ambiguity. I don't think that you can deduce that from the facts of this record. I think it's very clear, based on his bankruptcy filings, repeatedly signed under penalty of perjury, that he regarded that lease as an LLC lease and those assets as LLC assets until such time as it became inconvenient to him, at which point he altered his papers and filed this adversarial proceeding against my client. So if the panel wants to focus on one thing that I think would resolve this whole case, it's this question of estoppel. This case is primarily about the integrity of the judicial process. The question is, can you repeatedly affirm under penalty of perjury that certain assets and liabilities are not yours and then turn around and claim that they were when it would give you a cause of action against somebody else and maybe get a little money out of them? Now, another thing that I think needs to be discussed is the standard of review question. And I'm not familiar with this Dinray Partita case. I don't think I've heard that case until this morning. But I think we need to focus on the factual questions. And there's two that come to mind here. One, this question of the property and the estate, the records and such. I don't think I've heard this statute referenced before. I don't think I saw it in the papers, but I could be wrong. That the records are presumed to be property of the lessee. Well, that argument begs the question. The whole question is, who is the lessee? Because the court below found, based on plentiful evidence, that the lessee was the LLC, those records are presumed to be property of the LLC, and thus not part of the bankruptcy estate. You know, it might be more appropriate to say the court concluded in the context of a directive verdict that the plaintiff here hadn't met its burden of establishing that the individual was the lessee. That be fair? That's correct. Okay. That's a much more precise way to put it. Okay. Now, on the subject of the court's findings, though, I'd like to end with this and then leave time for you to ask questions if you have them. Judge Serzolo did find who the lessee was. We heard from Mr. Jackie just now that's a question of fact. I think he's right about that. And he did so partially on the basis of Mr. Gadbois' lack of credibility. And there was a prior judgment for a crime involving fraudulent conduct that was admitted. However, if you will read Judge Serzolo's decision carefully, he's very clear that he didn't need that particular piece of evidence to make that finding. In fact, if all that we had in this record was the complete 180-degree change of tune in the amended bankruptcy paper, that would be sufficient to establish a lack of credibility. But if the court wants to review the record, I would suggest that you will not find any fact in this record that supports the premise that Mr. Gadbois does have credibility as a witness. So if you're looking for clear error as opposed to substantial evidence, I think it's very clear what you will find. Judge Serzolo heard the evidence. He had a witness with no credibility who had made previous misstatements by his own admission to the court under oath, basically saying that he had a secret understanding of a lease that he had signed that he didn't make known to the other party and that all of the circumstances indicate would have been on a reasonable basis. And on that basis, he should be able to bring this action against the article. So I think those are really the key issues in this case. I'm happy to answer any questions that anyone has. No questions? Okay. Thank you very much. We have no questions. So the matter is submitted, and you'll get our decision in due course.  Thank you very much. Thank you. Thank you, Your Honor. I appreciate your time. Have a good day. Thank you, Judge.
judges: FARIS, LAFFERTY, and SPRAKER